Our next case is 2024-602-31, Airlines for America at Long Beach v. United States Dept of Transportation. You may proceed, Mr. Sportsman. Thank you, Mr. Sportsman. I would like to make a brief report. Shai Goretsky for Airlines for America and the other commissioners in 2024-602-31. As the State Panel legislator, DOD leads the story by prescribing the Code of Conduct for Airlines. Under Section 417.2, DOD can investigate and figure a barrier of progress. If it finds the practice to be unfair or deceptive, it can order the carrier to stop the practice. But it can't make generalized rules for the industry that indicate what practice the carrier must adopt. Excuse me. Just read Section 417.2's plain text and compare it with the Civil Air and Nautical Sports Authority, which Congress revoked in deregulating the airline industry. The CAB had authority to, quote, prescribe the lawful practice as defining an unlawful one. DOD doesn't. That is the, quote, best reading of Section 417.2. That's what DOD itself said in the notice of proposed ruling in October 2025. DOD said it has only, we quote, a judicatory authority to meet these high case orders to stop a particular practice after hours and opportunities for a carrier. The rule here exceeds that authority. Rather than adjudicate a particular carrier's practice, DOD issued the rule after deciding what industry should use in Denver to implement DOD's preferred view of the carrier supply chain. DOD didn't order any airline to stop any particular unfair or deceptive practice, which is all DOD had the authority to do. More than an issue of rule, say, providing guidance about how to interpret the term unfair or deceptive in adjudicating airline practices. Instead, DOD imposed unfair or unlawful security through detailed website design specifications reflecting the Department's view of good policy. That is unlawful. DOD can't explain why a brief now and the October 2025 NPRM did two different things. The correct reading of the statute is straightforward. The court should say, take the rule in its entirety. DOD should suggest only partial vacancy based on an admitted notice of product violation. But it makes no sense to dodge the statutory authority question, particularly when a state panel has already gotten it right and DOD speaks out of both sides of the town and could reimpose its code of conduct. I welcome the court's questions. Did you file a 28J letter with this notice of proposed rulemaking? We did, Judge Eisen. Well, there was one about the standards for conducting hearings. That's not what you're talking about, though, is it? So, the one that I'm talking about is the October 2025 NPRM, the citation for it. It might be federal register at 48850. And it describes what DOD's authority is under 41712. And the way it describes it, DOT said, the department's authority to issue regulations under section 41712 is limited to declaring the practice to be under-accepted after notice and opportunity for a hearing. The department's rulemaking authority under section 41712 does not extend beyond that application. I'll take your word for that. I noticed in the DOT brief they said the department has announced plans to initiate a rulemaking in early 2026 that would examine rescinding the ancillary fee disclosure and other miscellaneous requirements. Is that correct? My understanding of it is limited to what they said in their first part. So, here they're saying they want to uphold the authority to make this fraud rule, but they're also saying we're proposing to rescind it? That seems to be what they're saying, at the same time that they are making inconsistent statements between the NPRM, which talks about the limited authority under the statute to adjudicate particular practices to be under-accepted on the one hand, and on the other hand, the arguments they've made in their brief defending the rule goes far beyond that authority and actually describes, again, as the state panel put it, a code of conduct for error. But your position, counsel, your position is that they do have general rulemaking authority, plus they have specific authority to adjudicate unfair, deceptive practices. Those two positives don't add up to sufficient support to rulemake against unfair, deceptive practices? Well, whatever rulemaking authority they have is rulemaking authority to carry out for the 41712. And the 41712, by its terms, talks about identifying and adjudicating a particular practice and declaring that similar practice to be unlawful. So the court doesn't need to go so far as to hope that DOT has no rulemaking authority at all. DOT could, for example, issue a rule that defines what unfair, deceptive— But your position is they don't have authority to pass price-related rules. In other words, DOT accepts that it can't set the prices, but it's still saying what I think the D.C. Circuit said in spirit, which I didn't see cited or discussed by you, which is that they do have authority to pass price-related rules. So I guess the question is, would we have to split with the D.C. Circuit, and would its regulations that it upheld under rulemaking authority now be essentially vacated by us? No, the person who had to split with the D.C. Circuit, the D.C. Circuit obviously would present a different rule. But critically, in the D.C. Circuit case, the statutory authority argument that we are making now was not raised by the petitioners there. The D.C. Circuit simply didn't consider that the statutory authority question as well as I wanted to. With respect to your other question about whether DOT can do anything with respect to prices, we're of course talking here about disclosure of ancillary fees. We're not saying that DOT can't adjudicate the fairness or unfairness of an airline's particular practice with respect to how it discloses ancillary fees. What DOT can do is propagate a rule that requires airlines to do that in one particular way. Would you please explain a bit, because I don't see it in your briefs here, it's elsewhere, why this is a 186-page rule, and exactly what is the detail of what it requires airlines to have, as I understand it, on the very first screen that pops up about a fare? This rule contains a number of different prescriptive requirements of airlines. I'll get to the first screen point, but one point I want to emphasize first. The rule requires airlines to adopt a verbatim disclosure on its website about the collection. Airlines must use the exact script that DOT has written. Mandating that exact script is not stopping an airline from engaging in a particular unfair practice. It is implementing DOT's view of how airlines communicate with their customers. That is not what Section 41712 authorizes DOT to do. That is at odds with the deregulatory purpose of the ADA. Under the civil aeronautics board's authority, which preceded DOT, it did have the authority to prescribe a particular practice when it found an unlawful one, but DOT simply doesn't have that authority. In terms of other things that the rule does, it requires airlines or ticket agents to disclose, quote, during the itinerary research process at the first point where a fare and schedule was provided in connection with a specific flight itinerary. You have to, at that point, post baggage check fees for the first bag, baggage check fees for the second bag. These disclosures have to appear again on that first page. They can't be by hyperlink. DOT has imposed those requirements. That's not stopping a practice. That's telling an airline, this is the one way you must do it. And they also have to account for the status of the passenger, right? They have to display passenger-specific information and account for status. That's right. The disclosures have to be passenger-specific. So that means that depends on whether you're a member of a particular frequent flyer club, whether you have a bank card that gives you frequent flyer miles. And, of course, we know there are numbers of those. So they have to account and adjust for those on a rolling basis, correct? That all has to be displayed again on the first page. This is all a far cry from what Section 417.2 engages, which is that DOT will identify a particular practice that a particular airline is engaged in and adjudicate that practice. Well, so let me ask you. I'm sorry, are we not finished yet? Go ahead. Let me ask you, your responses and Judge Jones' questions really go in, it seems to me, to perhaps over the breadth of this regulation. I'm going to ask you a narrower question of why the authority doesn't exist. You're probably more familiar than I am with the American Hospital Association v. LRB, which says that the statute gives specific adjudicatory authority to an agency. The agency can also adopt, even based just on that authority, rules, regulations of general applicability that will help guide those decisions. Why aren't we in that area insofar as the authority is concerned? And the argument, justified or otherwise, really is that this rule is perhaps arbitrary and imprecious, it's overdone, or which is, I don't think, a force at this point. I think there are two questions with respect to authority that the American Hospital Association only gets in the first one. The first question is, can the agency propagate any sort of rule at all, pursuant to Section 112? The second question is, if it can, what is the scope of the agency's authority to propagate the rule pursuant to Section 112? And you can answer one of those questions. I'd like to answer both. Sure. We are not suggesting that the agency goes so far as to suppose that the agency cannot propagate any rule with respect to 417.2. And specifically meaning the sorts of fees and other things that are in this rule. What that means is that the limitation is that the rule under Section 417.2 cannot mandate that airlines engage in particular conduct. What it can do is, for example, it can define what unfair or deceptive means. It's the standard for how we want to interpret that. But what if that definition was it's unfair and whatever, not to disclose all relevant fees when the first price appears, which is basically, I think, what this much more detailed rule is requiring. The only way that the DOT would have the authority to get to that point is if it ruled out all other alternatives as being unfair or deceptive. What about, for example, as is presented to DOT, the option of letting consumers who want baggage charges, that baggage charge fee information, which not every consumer does, let them check a box on that first screen. And if they check the box that they want, they'll get the information. If not, they'll avoid the card. That is a solution that's totally fair, I'd argue, that was offered to DOT that DOT didn't consider. The DOT has ruled that out by mandating its alternative approach for how fees have to be displayed. In other words, that mandate goes beyond adjudicating and stopping a particular practice. It is dictating DOT's preferred practice without ruling out alternatives. So it's not that DOT can never properly be able to provide any guidance. That's what American Hospital Association speaks to. You see what I'm saying? The only rule is that they can prohibit certain things as not being fair. But they cannot create a specific set of things that they have identified are the fairest or the most fair or something like that. There's some sort of line drawing that we're in the business of doing, but I'm not sure where we're getting the reasoning for that line. So first of all, what they've done here is identify the only, in their view, fair way of doing things. That's what the mandate is. Then that means that if an airline used an equally fair and non-deceptive method of disclosure, they would have committed a violation. Correct. And as for where that limitation comes from, why the DOT can't do that, it comes straight from the test of 41712, which is, again, the airline can adjudicate a particular practice to be unfair, and it can stop that practice. So you read 41712 to actually reduce and limit the powers, the general rulemaking powers of 40113. That's not how I would read it. I would read the general rulemaking authority to be the authority to carry out particular provisions of the statute. And so if the authority would carry out 41712, not to expand it. But we know Congress wrote explicitly in the penalty provision that 41712 contemplates that rules will be promulgated pursuant to that specific statute. The penalty provision has an A and a B. The A recites a laundry list of statutory provisions that can be violated. The B, as the statement will explain, recites a laundry list of regulations that might be promulgated pursuant to those statutory provisions. But B is not saying that any provision in A permits prescriptive rulemaking of the statutory provisions. So is your position basically that under 41712, the agency may make rules to set the stage for the adjudications that that section envisions? In other words, they can define various aspects of it, but they can't prescribe things. Is that your position? I think it can do that. And if you look at pages 43 to 47 of our amendment brief, we cite there rules that DOT has promulgated that define what is unfair and deceptive. So DOT can do that. Okay, I do have to wonder why, given that the ruling of the panel was sending it back to have them discuss with you, and we were in the meantime staying the rule, I don't understand why y'all didn't find that helpful. Because in talking with them, maybe y'all can figure out something that the airlines can do that's not overly expensive or overly difficult, but that makes sure that the people checking in are able to do it and learn what they need to learn and not go, oh my gosh, I have all these costs and so on and so on. Why can't y'all just go do that? I don't understand why you took it to en banc when that was what we did. Well, respectfully, Judge Haynes, there was an extensive back-and-forth notice and comment process before this rule was promulgated. As the panel correctly recognized, the notice and comment procedures even so were not followed. But there was an extensive process, and DOT came out with a rule that exceeds statutory authority. Going back to DOT without providing DOT with the guardrails on its statutory authority, is DOT able to simply reinstitute another rule that provides for prescriptive rules that go beyond its statutory authority? I'm just going to go back to Judge Wilson's question and finish on what it is that DOT can do. One example, Judge Wilson, as we were discussing, is DOT can promulgate a rule that sets a standard of unfair and deceptive. DOT, in its brief, cites a number of other rules that it says, under our view, would be impermissible. Some would be permissible, some would not. But to give you an example of rules, it might be okay. Certain disclosure rules, like, for example, if you book a flight that is marketed as a nonstop flight, it actually requires changing aircraft. DOT can say, that's an unfair and deceptive practice. Stop doing that. What about mandating disclosure of on-time performance so you don't buy a ticket that you can't make the connecting flight to? So, I think, in theory, DOT can't do that particular rule when they have aspects that are impermissible. But in theory, DOT could find that it is an unlawful or unfair practice to misrepresent the timeliness of a flight and tell airlines, stop advertising flights that are chronically delayed. What about a rule that says, if you purchase a ticket, you've got 24 hours to get a reason? I don't think DOT can do that. I think that that is mandating. That's not just saying, here's an unfair practice. That's saying, here's the only practice that is going to be permissible to provide a 24-hour refund. There may be circumstances. Imagine that an airline wanted to offer a deeply discounted ticket. You can fly from here to D.C. for $10, but no refund. You've got to buy it in force. Is that it, Sarah? I appreciate you going over, but why isn't it the right way that we look at the 712 authority to prosecute and adjudicate specific deceptions, then when you get enough evidence of industry-wide abuse, you then use your general rulemaking to say, now we're going to come up with a rule subject to notice and comment, subject to arbitrary and capricious judicial review, and if that, then you've got a rule in which all of you have been doing this too much. I think in that situation, there is something that DOT can do, but it doesn't go quite as far as what you're asking is possible. DOT could promulgate a rule that said, we have seen and adjudicated the following practices by airlines. Here are the principles that we have drawn from those adjudications about what makes something unfair or deceptive. Airlines, you know, go forth. What DOT cannot do, though, is say, and because we have seen this practice five times, we are going to foreclose all potential innovation in these deregulated industries. We're not going to let airlines try anything else. The only thing they can do is follow our vision of what the goal is. It's just disclose what you're doing. It's not, here's the price, here's the rule. It's tell the consumer that if they've got an extra bag, it's going to be $50, so if they want a seat next to the exit, it's going to be another. It's just disclosure, so American consumers in a deregulated environment get to know what the cost will be. I think there's a difference between whether we're talking about just the fact of disclosure, which, by the way, all airlines in this case, all airlines that I represent in this meeting, do disclose their mandatory fees to consumers, do it without disputing that. There's a difference between mandating disclosure and mandating the when, the where, the how, the pervading language. That goes beyond just the fact of disclosure, and that's what we have to do. I just have one question. The panel, everybody apparently now agrees that at the very least, the agency acted arbitrarily and capriciously by trying to shore up its lack of findings of necessity with that rough analysis, right? That implies to me that the DOT never really adjudicated anything that was going on that was unfair or deceptive. I think that's right. The fact that they admitted it, so if the thing goes back, even under arbitrary and capricious, then they have to prove in some way, and which they have not chosen to do so far, that in fact consumers were being, tendency to be misled. And if I may, two points to respond to that. One, I agree they were not adjudicating in particular airline practice. So what happened here is this was a process that DOT initiated based on complaints from consumer organizations, and based on that, they came up with their preferred vision today in public. It's not a situation where they said, airline A, B, and C are doing the following. Let's look at that and get a thumbs up or a thumbs down. Second, although DOT has admitted the procedural violation here, it makes no sense to skip over the authority question and only adjudicate the procedural violation. Chief. We've got a question. I do. So it sounds to me like you're saying DOT can only prohibit, but it cannot prescribe. Is that what you're saying? That's correct. And so they could examine six different ways to do something, and they'd have to issue a rule that says we prohibit these five. But they couldn't just do a rule that says we prescribe this one. Is that what you're saying? That's correct. They might be able to reach it. And that makes sense to you? I think it makes perfect sense in light of Section 417.2, which talks about stopping a particular air carrier. Well, 46301, that's a lot. The 46301A-B actually uses the word prescribed, representing what you can do under 417.1.6. It says a regulation prescribed or ordered issues under 417.1.2. Use the word prescribed. It's talking about prescribing a regulation. It's not talking about the prescriptive regulation. There's a difference. The prescribed in that context is talking about definitive probability. Yes, DOT can probably get some regulation under 417.1.2. But going back to my earlier example. So they can prescribe, but it better not be prescriptive. They can probably get a regulation. That's what prescribed means in that context. But it cannot be a regulation that mandates a particular practice. That is the whole point of deregulation in this industry. DOT can say this practice is no good, but airlines then can innovate different approaches and try to come up with options that benefit consumers. And DOT retains the authority under 417.1.2 to examine those practices and take thumbs up or thumbs down, but not the authority to tell airlines this is the one and only way that you must do this. That is the authority that DOT's predecessor has. Congress took that away. Thank you. Thank you. Thank you. We'll hear from Mr. Stroud. Mr. Stroud. In the dawn of air travel, air advertisements have always included a price and a destination. Fly to Dallas, New York, or the United States. Simple, truthful, and effective. The rule before the court today is to upend that. And it's based on a premise that 665 passengers in 2019-2021 complained in some way about bad ground clearance fees. Out of the $2 billion that flew there in those same years, that action is warranted. The issue is that in 1978, Congress made a public effort towards American air travel. It fired the central planner and said we're not exporting. It hired the referee, the Department of Transportation. It explicitly withdrew the government's power to manage domestic prices and fare disbursements. Instead of the federal control rating, we now have a regime of market competition. And the difference between those two is a high risk. The planner draws up the type of referee phone calls and strikes. We ask this court today to give them over three independent reasons. First, on statutory authority. A plain reading of the tax is cleared. Congress decides that the agency shall no longer have the authority to manage how prices are presented to the public. Proactively. And it delegated a tax authority for foreign air travel only to do that. That's in Chapter 415, Section 415.04. Reading that, reading 417.12 in a way that allows the DOT to act. This rule here would make Chapter 415.15 services. Second, the First Amendment. The rule enforces a federal speech regulation. It restricts truthful, fairly advertised. And it compels the government to manually ensure that the consumer is not asked to. Because it also discriminates on a speaker basis, so it all requires that height and scrutiny apply. And the third one, the ADA. The rule is arbitrarily precious because it ignores the unique low-cost carrier business model, the severe operational risk that the costs and burdens of this technology require from low-cost carriers. And lastly, on remedy. And I want to address the question that came up a few times about should we remand. Absolutely not. Remanding would set a dangerous precedent that any agency, not just the agency here, will smuggle in an analysis and a final rule and avoid substantive review. And that would be a rubber stamp in the back of the head of the agency. Really, the issue is not that we didn't have a chance to comment on the rubber stamp. The issue is the statutory authority that the agency does not have to issue the rule in the first place. You're welcoming questions? Yes. In the notion of comment, did you specifically say statutory overreach, no authority? Yes. The January comment was filed up in two days. The issue is that the agency does not have the statutory authority. I didn't see you reference it all in your brief, 4.0.1.1.3. And yet that's the statutory grant to issue prescriptive regulations. Yes. We don't challenge the overall authority to issue rules in 4.0.1.7.1.2. It's done so in the past. And those rules have been in two particular buckets. One, which is a performance failure. And that gets to the types of rules on the night of the morning. Materiality, unrealistic scheduling, which was brought up. The airline advertises that the flight leaves at 10 a.m. on Wednesday and it's 50% of the time it doesn't. That's when the agency expects unrealistic things on the schedule. And all these go to the fact that the customer doesn't get what they paid for. We don't challenge the DOT commissioning rules on that in that bucket. The other one is the customer's not getting the product at the price advertised. So, you know, if you get a $100 fare and it gets to checkout, you don't have that, you don't have anything else, but then there's another $50 fee. That's a deceptive practice we think the agency should regulate. We don't challenge that. So what relief do you seek? Do you seek statutory rules? What relief specifically would you go away happy with? Well, there's numerous ground here. I do think that the cleanest one here is on statutory authority. We think the way that DOT has issued this rule to control price, the first interaction a customer has with an airline, which is to contradict not only the deregulation error, but almost 100 years of air travel were deleted. So aeronautics were never regulated. But if we were to vacate under the APA? That would be OK as well. We think there are reasons to do that. I'm not foreshadowing. I'm just trying to figure out what your argument is. Yes, Your Honor. We do think that the procedural grounds would probably not be appropriate for a few reasons. The one I mentioned about the precedents, funneling in information at the end and avoiding the substance of review. The other is the practical impact of that is DOT then has to go withdraw the rule, which was brought up in the APA issue, a notice of withdrawal. I think it was March 1, 2006. That has to go through notice of comment. And then they have to issue another withdrawal action after that. That can also be challenged, come back to the court. And then you have a dominant rule floating around for who knows how long, given all the same reasons. So it makes sense to leave certainty to the industry to decide that issue now rather than leaving the dominant rule. So to ask Chief Judge Diorat's question in a slightly different way, I think that's what I'm doing. If we were to agree with you, what would the final paragraph of our order say in terms of what we're directing to happen procedurally in this matter? I think they would say that the rule is medicated. If you're doing it on the agency grounds, the agency acted arbitrarily. They didn't consider under State Farm. They didn't consider the policy factors that Congress put in place. They didn't consider hundreds of millions of dollars of impact immediately on the carriers to implement this complex system. They didn't consider the fact that Congress says you need to be hands-off on all strikes, making plays for the airlines. So it's medicated and that's the end of the proceeding. I'm just asking you what direction would you give in summary of it, otherwise it may be a long opinion. We would ask that, yes, the rule is medicated. If DOD wants to come up with a rule that addresses the natural problem, they can do that. You're almost doing the government a favor by vacating versus being handed. They don't have to go through the whole notice and comment and challenging areas of potential litigation on the other side. Well, what's your position on this idea about vacating and maintaining the state of the state panel issue? Remanding and maintaining. Remanding. Is there any authority for that? No, that would be my third point on non-remedy. Of course, the ordinary practice of this circuit is to vacate when the rule is unlawful. There are certain situations where, you know, there's reliance where the rules aren't even in place, things that don't apply here. You could remand to avoid destruction, but there's no evidence that the government has been showing that those factors apply. So you just have to support the policy. It's precedent. On the aviation, it actually works. Before we get to remedy, could you speak briefly to the Seventh Circuit opinion in United Airlines as to whether the predecessor provision actually gave DOT, the predecessor authority, to be able to pass general rulemaking, having perceived specific instances of deception? Yes. We don't see the United States working with our position. I think, as I mentioned, there are certain areas where they outrightly belong within those two buckets. It doesn't cross over into price control. Where's the statutory authority with the bucket? Well, I think that to just reframe your question, you almost have to start with the nation, but where's the authority to begin with? And we know DOT previously had authority to control prices, to control how those prices were presented to the public, to ensure that the carriers adhered to those practices, those published rates. The Congress took that authority away from the United States government. If you look at Section 415204, it had the authority right there. DOT has the authority to make requirements on how the airlines present their tariffs, the affairs and the tariffs. But only in the international context. Yes, exactly. So Congress took it away domestically while preserving it internationally, which strongly implies the negative that Congress did not preserve it domestically. Exactly. That's exactly correct. And you don't even have to infer. What authority did they have? It's right there. Congress intended DOT to have this authority to do the exact same thing they're doing, but it's in a different context. What is that? You talked about price. What is it else that they took away? What is it that you're talking about? So when we think about the rate-buying doctrine, it's really based upon the price and the publication of that. And so Congress took away both of those. There used to be another section, Section 4, including the Civil Aeronautics Act, which allowed the DOT authority to control that, to control where the carriers flew, to control how much they charged, what they were reporting to the public about it, all the details about why. Congress took that away for domestic travel. Well, Counselor, what 41504 says, I'll probably quote it for you, in the way prescribed by the Secretary of Transportation Regulations, every air carrier and foreign air carrier shall file what the Secretary calls and keep open, and then you get some foreign travel. Isn't the rate filing, and this is certainly not my area, isn't the rate filing just talking about that, and not talking about what would appear on a screen to the consumer? Well, Your Honor, in the context of that, I understand the language. What that report does is it tells not the government to say, here's what you need for that. Let me ask you, what was abolished by deregulation? Was the obligation, was it not, by carriers to file what the Secretary, the rates are going to charge, and then they'd have to get approval for that. That's now open, and under this regulation that we're dealing with here, that's not changed. So aren't we talking about something much different than the kind of rate filing that 41504 is talking about? Not exactly, Your Honor. So there was the actual rating that was filed, so we're not exporting that. But under the same statute in Section 403, the Civil Rights Act would also require the airlines to publish those rates, those charges, those details, anywhere else that the DAB decided. It could be at the airport kiosk, it could be at the ticket counter, it could be at a local remote office. So it wasn't just strictly given to the government. It was, we're going to tell you where exactly you're going to present these fees, anywhere. If we were to resolve this case under the statutory interpretation theory rather than under the APA theory, would we have to address these other grounds like non-delegation and major questions, or could we just, is the case easier under the APAC theory than the statutory interpretation, given that you are not taking a complete and total position that you can't promulgate rules, that they can't promulgate rules, because then you have to parse what is allowed and what's in what bucket, as one of our colleagues said. I think you would have to address the statutory question before you get to the APA. So we're going to have to address it anyway? Yes, Your Honor. I don't see the APA decision for you, because you have to assume there's some authority to do it. But it can just be based upon the language and not on whether it's delegated or whether it's a major question. Correct, yes. If you just look at the statute, it's clear. There's the authority that they're trying to use in APA, you know, on this case, in 41710. So it's not trying to implore deregulation somehow informs how we read the language. And I ask that because there's been a lot of talk about the impact of deregulation, but it would seem to me the opposite as to where you'd get. In other words, Congress says, okay, companies, you're deregulated. You can high prices, low prices, high the prices. But, therefore, all the more reason we, the government, have to make sure you just tell the consumer in this deregulated price environment what the prices are. Why doesn't that deregulation make disclosure, just transparency about your assets all the more compelling rather than less compelling? Well, I think that this, for the context that you gave us, as I already mentioned, airlines already do give us the information. It's before you get to the fare. It's the one click, you know, on the next screen after. You cannot get to the end of the check-out process without knowing you were not getting a carry-on baggage check back. And Congress left that to our request. Mr. Kroll, as your colleague said there, there's no evidence that any airline has not disclosed. It's just a question of how and where, right? That's correct. Number one. Number two, how much will it cost for low-cost carriers to comply with this rule? And what's your argument about arbitrary increases in regard to that? Yes, so your first question, we live in the most transparent time as far as it comes to air travel. You know, getting back to 1978, it was published in the newspaper. You had to go, you needed to make a phone call to go to the airport to get a ticket price. Now that information is available in the second clip. So there's no, the airline is going to do everything they can to make sure the customers know what they're purchasing, otherwise they're going to come back. And on the second issue of cost, as we noted in our declaration in the emergency pay motion, we're talking about, just this year, over hundreds of millions for just putting the system in, at least $100,000. And as far as the potential loss of revenue, because of the talking birds with third parties they have to get this information to, you could immediately lose a little over a billion dollars in corrections. And the DMT didn't consider that at all. Did the rule, did the rule, did the explanation for the rule include anything about that? It did not, Your Honor. Seeing no further questions, you've saved time for the muddle. Thank you. Mr. Springer. Thank you, Your Honor. Samantha Lee McCord, Brian Springer on behalf of the federal government. As we explained in our brief, the merits panel correctly concluded that the rule challenged in these cases was issued without observance of notice and comment procedures required by the Administrative Procedure Act. To support the rule, the agency relied on a study about the travel habits of college students that was released months after the close of the comment period. Although agencies are not required to redo notice and comment, whenever new information comes to light after the comment period, the problem here was that the data from the study did not corroborate other data in the rulemaking record or confirm prior assessments by the agency. For that reason, the agency should have afforded petitioners and the public an opportunity to comment on the study, and that's sufficient basis on which to grant petitions for review. Petitioners acknowledge that broader arguments, including their arguments about statutory authority, could implicate a whole host of familiar and longstanding consumer protection rules. In this case, the court doesn't need to reach any of those questions here because, as I mentioned, the notice and comment error is disposable. I welcome the court's questions. Counsel, I didn't see in your brief that you responded to the 41504 argument that this is a rate-filing issue and affects your authority. Give me your take on that. Jim, I have a couple points on that. I think our brief did respond to it and said that this case is not about the rate-filing doctrine. It's not a situation in which DOT is requiring airlines to file rates with the agency and then only charge those rates, and that is what Congress abolished in the Anti-Deregulation Act in 1978. I just think that that doesn't have anything to do with what we're talking about here. Here, we're talking about disclosure rules that are designed, or at least were intended, in the Department's previous determination to go after an unfair and defensive practice in the industry, and that is authority that the Department and the agency have had since 1938. That's unchanged authority that Congress has always retained. Well, don't you agree that a 186-page rule is far longer than any other rule that's been promulgated about unfair or deceptive advertising? Your Honor, I think that this rule, at least the GM of the rule, is only about 58 pages. Oh, is that all? Your Honor, most of the description of the rule is just laying out the previous agency's determination about why these are unfair or deceptive practices. I don't think that this is a situation in which the agency, you know, is spelling out a huge amount of requirements. It's building on previous requirements. You say it doesn't involve rate filings, but at the same time, once you've promulgated this very didactic method of revealing what all these charges are on the basis of each customer who's inquiring, if the airline has deviated from that, it is liable for an adjudication that it violated your rule and will have to pay thousands of dollars, correct? Your Honor, there are other rules that say that you can't raise the price after a consumer buys, you know, purchases airfare. But we're just talking about this rule, and a violation of this rule can incur, I think, the other 43-110, a $75,000 fine, right? Your Honor, there are fines that can come, you know, through buying. So why doesn't that affect rates? Your Honor, I'm not saying that that should affect rates. Well, you don't disclose. You are charging X amount for the second bag. You put it on page two of the disclosure. It's hard for me to envision what's going to happen. But you put it on page two instead of a pop-up on page one. Ergo, you have violated the rule. Ergo, the fine is $75,000, which is far higher than just saying you can't charge that amount. So essentially, you're affecting the rate. Your Honor, I don't think that's the right way to think about the rule. I mean, what the rule did, the determination that the Department made, was that failing to disclose upfront baggage claim and baggage change and cancellation fees was unparagraphed because consumers wouldn't be able to figure out what the actual cost of their trip was going to be. Now, as I mentioned at the outset, there's a notice and comment violation here that doesn't require the court to actually get into the specifics. Well, the problem with the violation of this minitude is that it simply has to do with the RUP report, which was trying to show up what the rule originally said was, we don't really know if anybody, we can't really quantify if anybody's injured by the way in which this information is disclosed. So the RUP report said, well, 46% of students, blah, blah, blah. All right. We remanded. We say vacate and remand. No. Yeah. Stay and remand is what the panel said. And the airlines say the RUP report is full of beans. And the agency can say, no, it's not. We think it's good. Rule reinstated. So two or three years down the line, we're back here again.  On whether the rule was arbitrary and appreciated. Because you want to go back and decorate the file, have the same rule, because you don't want us to rule on that, and then we'll be back here again, because that will not solve the problem. That's what the record reflects. As we noted in our brief, and I think as you discussed with the other side, the agency has issued a notice of proposed rulemaking. It plans to issue a notice of proposed rulemaking early this year that would rescind all of the challenge requirements in this case because the current administration might make a different judgment about what requirements are necessary in this year. Well, wouldn't it have made more sense just to vacate the rule on your own accord, which I believe you could do, and leave us be? You're right. I'm not sure whether or not the agency has the authority to do that at this point when we're saying litigation, but at this point, the government has conceded that there's an error, and I think that the right remedy here, which is allowed by the specific statutory scheme we're talking about, is to set aside the challenge portions of the rule. Why aren't we just vacating the whole rule? Why aren't we just vacating the rule as our case law would do? Was this addressed in your brief? Yes, Your Honor. This was addressed in our brief. Where does it say that we cannot vacate under our precedent in this circumstance? Genevieve, if you'd let me just one second pull up the page. So you can just tell us. Why is it that we cannot vacate under our precedent? If the rule is deficient in many respects, why can't we just vacate the rule and be done and go on our way, and if you were going to do that anyway, so be it, or else you can promulgate a new rule and that can be litigated some other day. So, Your Honor, I'm pointing to, I think, pages 20 and 21 of the brief, and what we see there, so I just want to make abundantly clear that we agree that under the specific statutory scheme we're talking about, the court has the authority to set aside the rule, and so we think it would be fine after finding that there was a notice in common error here to set aside the rule. Now, the one argument we made was with respect to the challenge requirements because we read the petitioner's brief that's not challenging all of the requirements in the rule, so we thought it was appropriate to limit the need to that. But of course, if the court thought that everything was there, fine, the court could set aside the whole rule. All these questions about remedy are essentially saying to you, rescind it yourself, we'll set it aside so everyone has fair game at it, notice in common, stay subject to judicial review, but the worst case scenario for you is that the Fifth Circuit says, actually, the Department of Transportation cannot tell airlines that they have to tell their consumers what excessive fees there are, what supply to. So that's the worst case, so my question to you is, if we were to think that, would we be splitting with the D.C. Circuit in the Spirit case and essentially saying the rules they upheld, we, the Fifth Circuit, are saying they couldn't even follow? Sure, I think that the court would be splitting probably both with the D.C. Circuit and the Seventh Circuit in the United Airlines case. The D.C. Circuit didn't specifically address a question of statutory authority, but in the course of its discussion, it said that the rule it was talking about was one that fell plainly within its statutory authority. I mean, I guess it would depend on exactly what the court said here, I don't want to say that whatever the court said to these rules would fall. When you say they didn't discuss statutory authority, the first line of the decision is, pursue it to its authority to regulate unfair and deceptive practice. That's correct, Your Honor. All I meant was that there wasn't a statutory authority claim that was raised in that. That wasn't a separate claim that was raised. But why don't you tell us the rule that you think is most important so that, I mean, federal judges, when we travel, the government 24, 365 days a year pays our fees if we change. So this is not a concern. I don't know these things, but I'm guessing working Americans are really worried about surprise fees at the last minute for a bag or when they change. So why don't you tell us the single most important rule that protects non-federal judges, and don't worry about this enough, it would be lost if we said DOT can't even tell the airlines boots. Your Honor, I didn't want to single out one. No, I'd like to hear, I'd like to hear one that's particularly protective of consumers today. It's price one. Your Honor, I mean, I think a few that are important and that could potentially be called into question are ones like the 24-hour cancellation rule that I think everybody relies on when they book, you know, airfares. There's also rules about what happens if you need to switch flights. I mean, there's all kinds of things that, and these are rules that have been issued for generations under the same statutory authority, and Congress has never stepped in to say that it thinks that the agency is not supposed to be issuing these rules. Which statutory authority? Are you talking about 417.12, or is it the more general grant of rulemaking authority? Your Honor, I think it's a combination of those two together. Which one are you traveling under here? Your Honor, again, I think it's both. I mean, I think what the agency is doing here is it's exercising its authority under 417.12. Well, haven't some of those rules been promulgated after Congress passed specific provisions telling you to do it? Your Honor, in some instances it's happened, but in other instances it hasn't. And in this case, Congress attempted, apparently, to legislate about this issue, and then nothing happened, right? Your Honor, I don't think that's a definite thing. Part of what happened here was that there was a statute that was premised on some pieces of this rule, and not other pieces. Well, so Congress was moving in its own way. And another thing that I found significant, at least, was the amicus brief by the APTA crowd, which apparently provides all the airfare pricing information to the us-hoi-poi who search for pairs on kayak and Expedia and that kind of thing. And they said it was, A, it was going to cost hundreds of millions of dollars to adapt to this rule, and the agency finding blew it away. And B, they said that they have been working together with the airlines, their joint venture of thousands of airlines, to have more kinds of transparency. And again, the rule blew that away and didn't say let the industry operate under free competition and free market. Your Honor, I think all of those concerns that you have identified are ones that have to do with this rule in particular, which again, the agency is saying is okay to set aside because of the notice and comment error that the agency itself has announced plans for a student being proposed. So that all argues in favor, at least, of vacating the rule. Your Honor, again, we agree that the court has the power under this particular statutory subsection to set aside the rule. Again, I think the most important part that we are just emphasizing here is that we think it's important to look at benefits of that specific notice and comment violation. Okay, are you saying we should just throw it out and move on? I mean, I thought that you liked the way the panel did this because you start all over if we vacate. Is that what you want to do, is start over? If so, why didn't you just tell us that and not have this on bond? Your Honor, I think we did say that in our brief. I mean, that is what our brief, I understand, is to say. No, I mean, at the panel level, but even now, I'm not understanding. You wrote this thing about would examine rescinding the ancillary fee disclosure and other miscellaneous requirements. Why don't you just, do you want us to just throw this out and move on? Your Honor, my understanding is that I don't want to get ahead of the agency, but my understanding is that the agency's plan already, even before the court granted it on bond, was earlier this year, today, with notice of proposed rulemaking that would rescind the challenge requirement. So, I think we could end that in the same place. Your Honor, I'm wondering how much of a case of controversy we have and more of a timing. Is there something this court can do if DOT is somehow, or DOJ is advising them, believing they may be without authority? Otherwise, there's no need for us to go through all of this. If you're just waiting, DOT's just waiting to hear from us, go ahead. Your Honor, I mean, I can't speak to what, you know, I think there have been other priorities in the change of administration that the agency has announced its plans earlier this year. I think the target case, originally, in the spring of 2025, was to issue an NDRM in March of 2026. I don't know if that legal hold that may come later because the agency is handling a number of things. They're handling things about crashes over Reagan Airport. Your Honor, I mean, that's one of their, something that's been high on the DOT's radar I believe. And those folks who travel to Washington, D.C., very much appreciate that. Your Honor, I don't think that's what it is by, you know, what we're talking about here. And again, the agency, I think, is just moving toward doing this anyway. Why wouldn't we vacate the whole rule because it's intertwined and it's, we can't pick and choose and say, we're going to leave these little aspects there because the arguments made by the lawyer for the smaller carriers, frontier, et cetera, that the tremendous cost of the computer systems alone and the ability to talk to the third party dealers in the hundreds and hundreds of millions of dollars, it's all intertwined regardless of what rule you end up with or what numbers you get or what posting is required. Just the act of requiring a posting is what's costing these millions and millions of dollars and hasn't been considered. And so,           you can't tinker with it to say, oh, well, this could be on the second page, really, because it's still requiring a big overhaul. And so, that's why it's not appropriate and should be done and vacated in the entirety, not just some little quibble on the edge. Jerry, I don't think that we have suggested that it should just be on the edge. I mean, I think what our group talked about was the challenge requirements which include, I think, the upfront disclosure. But it's all intertwined. It's a whole thing. Posting the information in the manner prospectively to people in this way is intertwined with putting in the computer system regardless of whether it's a specific thing here or you're a little bit moderate on this certain requirement being on this page or with the site link. It's still requiring a new computer system. Sure, and I don't think we're talking      the court thought that all of these provisions were intertwined. It would be permissible under the law to vacate the whole rule. And then we would just vacate and be done with this case? Yeah, I think that is all that the court needs to do. If we did one sentence that just says the rule is vacated, goodbye. Is that what you want us to say in an opinion? And then, but not remand it, not say anything about the future, and then y'all will just kind of start over because you, I guess, are in a different arena on what you think you should do. Your Honor, I do think that is the ultimate disposition we think is appropriate for the case. I mean, to the extent that the court was getting into the merits, we think all that the court needs to do is recognize our confession of error on the point that the merits panel found that there was a notice. Yeah, but that is, to me, a different thing. Going back, the reason why we stay the rule but remand it was so that you could have the discussion I mentioned with your colleagues over there about airlines and so on and so forth and about consumers and this and that and be in that cubby as opposed to starting all over again. But if you're wanting to start all over again because y'all are in a different arena from the year that this was decided, then it seems to me that one sentence is all this court has to do. Your Honor, I don't think that the agency would be happy to start all over again again. The agency may have made itself, now, a different determination about whether or not this rule was necessary for a conversation and so I don't think that there's any reason for me to go beyond that. But if you're agreeing to baconer of the rule which would be the ultimate relief we would be able to afford here, back to Jed Stafford's question, what is the case for controversy? Your Honor, I think the idea that the rule is still on the books and of course it's been stated. Well, yeah, I get all that, but I think the question in my mind is why is it still on the books? If you agree to this, I'm not sure why we're here. Your Honor, as I mentioned, the agency is moving forward ensuring, you know, a rulemaking of the vicinity requirements. Of course, the court could wait for the agency to do that and if the agency rescinds the rule itself, which is the case, I think we could sort of end up in the same place if the court were to set aside the rule, you know, pursuant to the conceded notice and commentary that's in place. I mean, in fairness, there is a dispute between you and the airlines over the authority to issue the rule. That's sort of the precursor of saying it's arbitrary and capricious here, right? As 706 says, arbitrary and capricious are contrary to law. So you're saying DOT, I mean, I'd prefer it where otherwise, but DOT takes issue with the airlines on the scope of its rulemaking authority, right? Sure, but there's still a legal dispute about the agency's statutory authority here, but I think with respect to this rule, the agency has conceded that there was a notice of a comment there that warrants from the agency's rule. I think, I mean, I agree with Judge Jones, isn't that why? That's the legal proposition I thought you were here defending, which is the Supreme Court has never held that a rule can't stand on general rulemaking authority combined with specific authority to root out the    it's entirely right that this administration like prior administrations recognize that the agency has authority here pursuant to 401k. And if it didn't, if it didn't have the  let's say it goes back down, let's say you don't rescind it, we go back down, everyone gets their fair share of      then it still comes back up for arbitrary capricious. But also even after that, under the Congressional Review Act, if Congress thinks the agency overstepped, it kills it that way, too, right? Your Honor, I think there are many other mechanisms by which she will intervene. I mean, one other point I would make as well is that the petitioners here didn't even raise the statutory authority argument in rulemaking. In the future, if there are future rulemaking, if there are future rulemaking, if there are future amendments   points in rulemaking, then to the extent that they do, there may be a future for trying to address those points in issues of the rule. May I probe this theory of yours that this would upend unfair and deceptive trade practices throughout the  Number One   Yes. And it's a little bit different, this 47-112, whatever it is. It's a little bit different, though, because it says the agency may investigate, find that it is unfair and stop the practice. Now, in the FTC Act, am I correct, there are two separate statutory provisions, and one of them says you can adjudicate unfair and deceptive, and another provision says you can make rules about unfair and deceptive. Is that right? Your  I'm not totally familiar with the differences between the authority here and the authority that the FTC has. I mean, I think to address the point here, what the statute says is that the agency may investigate and decide that airlines are engaged in unfair and deceptive practice. No, it says an airline is engaged and rule with respect to an airline. Now, there is certainly the possibility, I suppose, of a mass action. We're going to bring three or four airlines in, and then we're going to adjudicate. But the agency did not adjudicate anything here, did it? No, I think the agency did adjudicate. It did have Notice and Comment rule making is far cry from adjudication, which is why they're completely different things than the ATA. So, I didn't mean this as a formal matter to do an adjudication here. It did a Notice and  proceeding. It also held a hearing, but it is allowed to do that pursuant to its authority under 40113A, which says that the agency specifically is allowed to prescribe regulations. And Supreme Court cases that stretch back, you  many, many decades, including the American Hospital Association case, that I don't think the other side responds to, says that that sort of rent of authority from Congress is a general grant. Well, maybe I'm just completely wrong, but I think, are there any other statutes about adjudication that say the agency may investigate, find its sentence, and stop? Is the  stop in any of these other adjudicatory things? Your Honor, I don't know if it's in any others. I don't have any other. Of course, the Seventh Circuit in the United Airlines case addressed it as an adjudicatory authority. I know, and in several respects, Judge Posner used methods of interpretation that have since been disavowed in the Supreme Court. So, you know, I'm not denying there were rulemakings in the  and I'm intrigued about the limits that the airlines are  exist here, but to the extent you say that if we took this provision and said that it prescribes adjudication as a powerful method of determining what's unfair and deceptive, and maybe some rulemaking behind that, it's not going to affect everything. Your Honor, I think it depends on the court. You would ask the court to follow the to the extent that the court is addressing the issue. We have asked the court to follow the principle that the Supreme Court has enunciated over and over, that even if a statute talks about specifically adjudication and provides that as one way to enforce a statutory mandate, the agency is still permitted to engage in rulemaking, and the point of doing the rulemaking is to give the regulated industry notice about what the agency has determined is an unfair and deceptive practice. It's hard to get a question in, and that's why you get  a lot of   the unfair practice is not to  everything on your first screen. Is that the definition, so therefore having everything on first screen is a way to resolve or ameliorate that problem? I think it's not shown in the agency today where it's saying that this could be unfair practice, and the way to operationalize it is you can only do it in one particular way, although here I would note that the rule needs                                    to be                                                        think